IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
APRIL 1999 SESSION

FILED

August 19, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE | * | C.C.A. #03C01-9812-CC-00430 |
| **Appellee,** | * | Blount County |
| vs. | * | |
| HUBERT D. PATTY, | * | Hon. D. Kelly Thomas, Jr., Judge |
| **Appellant.** | * | (Order of Contempt) |
| | * | |

For Appellant:

Hubert D. Patty
P.O. Box 5449
Maryville, TN 37804-2401

For Appellee:

Paul G. Summers
Attorney General and Reporter
425 Fifth Avenue North
Nashville, TN 37243

Michael J. Fahey II
Assistant Attorney General
Criminal Justice Division
425 Fifth Avenue North
Nashville, TN 37243

OPINION FILED: _____

REVERSED AND REMANDED

NORMA MCGEE OGLE, JUDGE

**OPINION**

Attorney, Hubert D. Patty,[1] appeals as of right the judgment of the Blount County Criminal Court summarily holding him in criminal contempt and imposing a fine of fifty dollars ($50.00). The trial court also taxed the appellant with court costs stemming from his conduct, amounting to nine hundred and twenty-five dollars and twenty-two cents ($925.22). The appellant presents the following issues for our review:

1. Whether the evidence is sufficient to support the trial court's judgment.
2. Whether the trial court denied the appellant due process of law.
3. Whether Judge D. Kelly Thomas, Jr., should have recused himself from the contempt proceedings.

Following a thorough review of the record and the parties' briefs, we reverse the judgment of the trial court and remand this case for proceedings consistent with this opinion.

**Factual Background**

On June 1, 1998, a Blount County Grand Jury indicted Douglas Boruff for the offense of rape of a child. The trial judge, D. Kelly Thomas, Jr., appointed the District Public Defender, Mack Garner, to represent Mr. Boruff. On July 21, 1998, Judge Thomas entered an order scheduling, among other items, a discovery deadline of September 14, 1998, and a trial date of November 12, 1998.

---

[1] In compliance with Tenn. R. App. P. 30(b)(2) and (d)(2), the parties have styled their pleadings before this court "State of Tennessee v. Douglas Boruff." Tenn. R. App. P. 30 provides that papers addressed to this court should contain a caption setting forth the title of the case as it appeared in the trial court. In this case, the trial court included its order of contempt in its order granting Mr. Patty's motion for a continuance on behalf of his client, Douglas Boruff. Notwithstanding the title of the case in the trial court and because Mr. Patty, rather than Mr. Boruff, is the appellant in these proceedings, we have styled this opinion "State v. Hubert D. Patty."

On October 26, 1998, the appellant appeared before Judge Thomas on behalf of Mr. Boruff. According to the appellant, Mr. Boruff had asked that the appellant replace Mr. Garner as his attorney in the pending rape of a child case. The appellant asked the trial court to authorize a substitution of counsel. He further indicated that he would not be ready for trial on November 12, 1998, and requested a continuance of the trial date. Judge Thomas denied the motion to continue the trial date and further stated to the appellant:

> The case is set for trial on the 12th. He's got an appointed attorney. And if someone else wants to be his attorney on the 12th, that is between him - - Mr. Boruff and the attorney. And if the case, for some reason, doesn't go to trial on the 12th, then the attorney can change then, too. But it's too late to come in, in a rape of a child case, two weeks before trial and say, I've hired a lawyer and have the case knocked off the docket.

An entry in the record on the same day, signed by the trial court and entitled "Arraignment," provided:

> This matter came on the Court's docket this date, represented by Hubert Patty. It appearing that the defendant has retained Hubert Patty to represent him in this matter, the District Public Defender's office is allowed to withdraw. Upon oral Motion for Continuance filed by defendant's counsel and after hearing argument from counsel for both parties, the Court is of the opinion that this motion is not well taken and is overruled. This matter shall remain set for trial on 11/12/98.

Subsequently, the appellant signed an agreed order, entered by the court on October 29, 1998, which authorized substitution of counsel. The order provided:

> Upon motion of the Defendant, Douglas Boruff, for an Order allowing the substitution of his attorney of record in the above-noted cause, and it appearing that respondent has hired Hubert Patty, who agrees to represent the Defendant in the above styled case at trial on November 12, 1998, and that respondent's original counsel, Mack Garner, should be allowed to withdraw.
>
> IT IS ORDERED by the Court that Mack Garner be

3

allowed to withdraw as the attorney of record for Defendant, Douglas Boruff, and that Hubert Patty is substituted as attorney of record for Defendant, Douglas Boruff . . . . It is further ordered that this case shall remain on the trial docket to be heard on November 12, 1998.

On November 6, 1998, the appellant again filed a motion to continue the trial date in Mr. Boruff's case and attached an affidavit to the motion. In his affidavit, the appellant attested that he had contacted the appellant's prior attorney immediately following the entry of the October 29, 1998 order authorizing substitution of counsel. However, Mr. Garner was able to provide very little information about Mr. Boruff's case, as the State had not yet responded to Mr. Garner's discovery requests. On November 2, 1998, the assistant district attorney general provided the appellant with information which suggested that a Dr. Cecil Howard possessed exculpatory evidence in Mr. Boruff's case. The appellant contacted Dr. Howard's office, but was informed that Dr. Howard could not meet with the appellant until November 12, 1998, the scheduled trial date.

On November 12, 1998, the appellant renewed orally his motion for a continuance. However, upon questioning by the trial court, the appellant admitted that, contrary to his affidavit, he had reviewed Mr. Garner's file on October 26, 1998. Accordingly, he was aware of the prior lack of preparation and lack of discovery in Mr. Boruff's case before signing the October 29, 1998 agreed order. He was also aware at that time that he would be unable to adequately prepare for trial by the agreed date.

In defense, the appellant asserted to the trial court that, when he signed the October 29, 1998 order, he did not realize that he was agreeing to the November 12, 1998 trial date. He believed that the order

4

was a step necessary to switch counsel, I just assumed.

* * *

I think I never indicated to the Court that I could be ready except what might be reflected in these orders.

* * *

I'm - - again, I say I didn't draft this order and I just signed it as a matter of course to get it up there. But I represented to the Court from the very beginning, I thought it - - I couldn't be ready by the 12th.

The trial court continued Mr. Boruff's case until December 16, 1998, but also held the appellant in criminal contempt of court. The trial court concluded:

[T]he Court finds that from what you've told me here today that you knew on the 26th of October, by having talked with Mack Garner and seeing the file, that not enough work had been done for you to possibly be able to try this case on November 12th. The Court further finds - - and on that same day, I had already denied a continuance for a general reason of not being able to prepare and for that reason didn't allow you to take the case as counsel for Mr. Boruff.

The Court further finds that you signed this order on the 29th day of October of '98, which is in the court file, saying that you agreed to represent the Defendant in the above-styled case at trial on November 12th of '98 and you knew at that time when you signed that order and you had known for at least three or four days that you could not be ready for trial - - or signed an order stating that you would be anyway, in order to get in the case as Mr. Boruff's lawyer.

And then on the 6th of November, filed a motion for a continuance because you hadn't had time to fully prepare. Having time to fully prepare is not the point. The point is that when you told me you couldn't be ready, I felt like that was a reasonable statement and I said it's too late to be substituting counsel, he's going to have to go to trial with his own counsel on the trial date and you cannot be his lawyer.

And in order to be his lawyer, you signed an order agreeing to something that you knew when you signed it that you could not perform. And that is plain and simple contempt of court for subverting and disrupting the Court's docket and the Court's order. And I am finding

5

you in contempt.

* * *

. . . But I would never have signed the order allowing Mr. Patty in this case had there not been a clear statement in that order that he agreed to be here ready for trial today . . . . But instead Mr. Patty signed that order and defrauded me when he knew full well that he couldn't be ready.

The court also reported the appellant's conduct to the Board of Professional Responsibility.

## Analysis

The purpose of criminal contempt proceedings is to vindicate a court's authority and to maintain the integrity of court orders. Wilson v. Wilson, 984 S.W.2d 898, 904 (Tenn. 1998); Robinson v. Air Draulics Engineering Company, Inc., 377 S.W.2d 908, 912 (Tenn. 1964). That having been said, a trial court "must abide strictly by the 'absolute provisions of the law'" in exercising its power to impose contempt sanctions. Sanders, No. 01A01-9601-GS-00021, 1997 WL 15228, at *3.

Thus, the trial court may only "issue attachments, and inflict punishments for contempt of court" on the basis of conduct described in Tenn. Code. Ann. § 29-9-102 (1980). See also Black v. Blount, 938 S.W.2d 394, 397-398 (Tenn. 1996); State v. Turner, 914 S.W.2d 951, 955 (Tenn. Crim. App. 1995). Tenn. Code. Ann. § 29-9-102 sets forth the following grounds for contempt proceedings:

(1)    The willful misbehavior of any person in the presence of the court, or so near thereto as to obstruct the administration of justice.

(2)    The willful misbehavior of any of the officers of said courts, in their official transactions.

(3)    The willful disobedience or resistance of any officer of the said courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of said courts.

(4)    Abuse of, or unlawful interference with, the

6

process or proceedings of the court.
(5)     Willfully conversing with jurors . . . .
(6)     Any other act or omission declared a
        contempt by law.

Our supreme court has further observed that the power to punish for contempt "should be exercised only when necessary to prevent actual, direct obstruction of, or interference with, the administration of justice." Robinson, 377 S.W.2d at 912.

> [C]riminal contempt that obstructs the administration of justice has generally been defined as any willful misconduct which embarrasses, hinders, or obstructs a court in its administration of justice or derogates the court's authority or dignity, thereby bringing the administration of law into disrepute.

Black, 938 S.W.2d at 399.

In this case, the trial court held the appellant in contempt for "subverting and disrupting the Court's docket and the Court's order." Specifically, according to the trial court's findings at the conclusion of the November 12, 1998 hearing, the contemptuous conduct occurred when the appellant signed the October 29, 1998 agreed order, knowing that the scheduled trial date was a condition of his representation and knowing that he would not be prepared for trial on the scheduled date.[2] Assuming that the trial court's findings of fact are supported by sufficient evidence, the appellant's conduct was encompassed by Tenn. Code. Ann. § 29-9-102 (2), (3), or (4).

In a criminal contempt case, the guilt of the accused must be established beyond a reasonable doubt. Black, 938 S.W.2d at 398. On appeal, this court applies the same standard of review to criminal contempt cases as the court applies in other criminal proceedings. Id. at 399; State v. Creasy, 885 S.W.2d 829,

---

[2]We reject the State's argument in its brief that the contemptuous conduct occurred when the appellant announced to the court on November 12, 1998, that he was not prepared to proceed with Mr. Boruff's trial.

7

833 (Tenn. Crim. App. 1994). Thus, the appellant must establish that no "reasonable trier of fact" could have found the essential elements of contempt beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e). This court will not reweigh the proof on appeal. Black, 938 S.W.2d at 398.

Applying this standard, we must conclude that the trial court's judgment was supported by sufficient evidence. However, in reviewing the record, we note that the appellant's conduct did not occur in the presence of the trial court. As noted earlier, the trial court in this case invoked summary contempt proceedings. Tenn. R. Crim. P. 42 (a) provides that a judge may summarily punish a criminal contempt only if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. Id. at (a); Black, 938 S.W.2d at 398; State v. Maddux, 571 S.W.2d 819, 821 (Tenn. 1978). In contrast, courts imposing criminal contempt sanctions for acts committed outside of their presence must comply with more stringent procedural standards, including providing notice to an accused and an opportunity to present a defense. Tenn. R. Crim. P. 42(b); Black, 938 S.W.2d at 398; Maddux, 571 S.W.2d at 821. See also Turner, 914 S.W.2d at 955.

Even in the context of conduct committed in its presence, a trial court should utilize summary contempt proceedings "sparingly, . . . in cases of 'exceptional circumstances'" when there is a need to act swiftly and firmly to prevent contumacious conduct from disrupting a judicial proceeding." Turner, 914 S.W.2d at 957-959; Sanders, No. 01A01-9601-GS-00021, 1997 WL 15228, at *3. In short, "the court[s] have evinced a preference for proceedings that involve notice, a hearing, and even, a different judge. Turner, 914 S.W.2d at 959.

8

In light of these principles and on the basis of the record before this court, we must conclude that the appellant was entitled to notice and a hearing prior to the imposition of contempt sanctions and that the trial court abused its discretion by summarily holding the appellant in contempt. However, while the trial judge was understandably upset by the turn of events, this record does not establish that he was biased in any way against the appellant. Nevertheless, we would suggest that the trial judge recuse himself upon remand. "Recusal is always preferred unless it would result in prejudicial or injurious delay." See Turner, 914 S.W. 2d at 961.

## Conclusion

We reverse the judgment of the trial court and remand this case for proceedings consistent with this opinion and Tenn. R. Crim. P. 42.

_____
Norma McGee Ogle, Judge

_____
Jerry L. Smith, Judge

_____
Joe G. Riley, Judge